Harrison Harewood v New York City 21-584 Mr. Glass. Good morning. Brian Glass for former teacher at Harvard Harewood. I'd like to start with a little bit of an orthodox approach. For a living, basically, I... That is not usually a great idea, but go ahead. To set the context of what I deal with when a client walks into my office, I need to evaluate whether the case can... a public discrimination case can survive a summary judgment motion. And I need to look at the cases out there and decide, based on what I'm seeing, whether this is a case that's going to have enough evidence for someone to invest in to bring this case that will likely survive summary judgment. And I do feel this kind of case has that type of evidence, that this should be going to a trial and not be decided by judges who are setting high standards of proof that are... it's like chasing a... you know, not high enough, not setting the bar so high. If you look out in the case log, Audie Memboree was someone who came to my office from the same exact school, and Judge Moskoff of the Eastern District said, in her decision, her motion to dismiss, Mercedes' alleged scheme to target older staff members and the sudden change in Memboree's performance ratings allowed the court to draw the reasonable inference that Mercedes diminished her responsibilities to facilitate her removal as she approached retirement age. I'm sorry. You're quoting from a different case? I'm quoting from Memboree, which is the same school, alongside the same... But wait a minute. That was decided on a motion to dismiss, right? Yes. So you simply assume is true all the facts in the complaint, right? They could be totally fictitious or they could be totally real. We just assume them all to be true, right? Yes. So you're not actually citing somebody else's complaint in another case as evidence. I mean, it's not part of our summary judgment record, right? I understand that. Okay. So I guess I'm just wondering, maybe it'd be helpful... we're dealing with summary judgment here. Maybe it'd be more helpful to be a bit more orthodox and rely on the evidentiary record that we have rather than a complaint filed in a case that is not before us. Well, we're going to go on to the evidentiary record. But that's not our evidentiary record, right? I agree. I'm just pointing out that there are cases out there. Like Walsh is another case we found recently. I'm sorry. What do those cases stand for? These are teacher cases where the district court... that's the summary judgment level. Judge Nelson-Román found that this was a case that was identical. It was a barred-tailed teacher. He was targeted out of her job. And he found there was enough evidence based on a constructive discharge to go to trial. There was enough evidence on district treatment to a trial. Well, I don't think we're... speaking for myself, I'm not familiar with the evidentiary record in those cases. So I'm not at least in a position to say that Judge Fela got it wrong because there's some other case with some other evidentiary record where a judge reached a different decision. And in any event, we wouldn't be bound by those decisions. So if you would maybe focus your argument on why the evidence in our record is sufficient, that would, I think, be a little bit more helpful. Maybe you should be a little less unorthodox. I agree. And the only reason I brought those up was to bring them back to this case. Because those cases have the same kind of evidence that our case has. What do we have here? We have a 33-year teacher in the same school who had an impeccable record. And in the last two, three years, all of a sudden she gets disciplinary letters. She gets more observation. She gets her classroom removed. That's the very type of evidence that in these other cases the courts found to invite a constructive discharge claim or a hostile work environment claim. And so the reason I brought those cases is not to be unorthodox, but to point out to you that these cases have the very same evidence, and this judge has decided there's not enough here. What is deficient in this record? I mean, they ask for comparators. How do you define a comparator when you have an art teacher in a school? The other comparator is the music teacher, the foster teacher. What happens to the music teacher? She didn't lose her classroom. She's still there. Would you point me to a specific example in the record that's admissible evidence of race-based discrimination or gender-based discrimination? What are the gender-based? I'm sorry. Race-based discrimination. It's the comparator evidence. We have comparator evidence that, for example, she was replaced by a young Hispanic when she was targeted out of the school. She was asked to train a young Hispanic replacement who's there. So you have that age interest there. We came up with 15 names of teachers from three different teachers. I haven't represented three of those teachers, but they came up with 12 more names of comparators to show that these were people that were targeted under the same pattern. And this is what these cases I'm citing to you are recognizing. These kind of patterns do provide enough evidence for this to be decided by a jury rather than a judge. And so the standard we're struggling with here is— I asked you for a specific example, and you talk generally about comparators. Give me a specific example. Juanita Murray, Stephen Bernstein— In the record. Yes, they were all named in the record. They were asked about a preposition on Mr. Mercedes, the principal. They acknowledged these were people in the school that were left out. You know, these were people—we put these as evidence in the record. Comparators is one of the things the court looked at. Do I have smoking gun evidence in these cases? The people said—it was also a meeting in 2015 where she sat down with them and they acknowledged that—and were suggesting perhaps leaving the school. It's a good issue of fact, but it was said there. But Ms. Heroin said that she was full. You know, she's looking to move on. And this is very late in her career. And when she refused to move on, she faced four years of the first disciplinary letters in her file. Her classroom was removed. She got four observations. She was subject to investigation. So this case meets the elements for all three of these claims to go to a jury. One is a disparate treatment claim because we showed comparator evidence. And we did have a meeting. There's a good issue of fact of what happened at that meeting. But we do have evidence that she was told to move on very late in her career. Just like the Walsh case. If you look at that story with the old math teacher, he was told the same exact thing. That was enough for Judge Ormson to put that to trial. So all I'm suggesting is that this record—the judges are leaving us with this heightened standard. And the Second Circuit has cautioned in cases that it should be too high a bar. And what is this bar? I don't want to invest—I don't want to wish the court's design on cases that don't have sufficient evidence. But I look at this record, and this has lots of evidence for a jury to conclude to make a rational finding that this person was targeted out and suffered— that she was forced to resell, that she took a leave of absence at the very end of her career, you know, and that she got more disciplinary language when she came back. So this is a classic—this does seem to have enough evidence that this should be going to a jury. And not only on the disparate treatment, but on the destructive discharge, as well as the retaliation, we also show that after she put filed a state division complaint and got a right to sue letter, right after that, she got more disciplinary language even after she left, or she was currently more disciplined. So it meets all the elements that we just thought—we don't really understand why this case is going to go to trial. Were the—on the retaliation, were the disciplinary notices issued after she was retired? Yes, they were. What happened is that she started a lawsuit after she retired. She was afraid of filing a lawsuit when she—so she came to me right after she retired. She said she thought it was so wrong to have—she was forced out early. And after she recommenced the federal litigation, just about when the federal litigation paddled blue, a year later, she got more disciplinary language. What were the employment consequences of that? This affects her ability to do something and to do things post-employment and related to DOE. Okay. Can I ask you, where in the record is there any mention of these disciplinary notices? Where in the record? Page. I understood that you cited in your opposition to summary judgment two pages of Mercedes' deposition, but I didn't see any mention of these disciplinary notices. In the record, in the evidentiary record, where? Can you give us a page? May I let you carry your bottle? Sure. Okay. We've got three minutes for a bottle, so we'll hear from your friend on the other side on behalf of the Department of Education. Good morning, Your Honor. I may appease the Court, making an attempt on behalf of the defendant to police— Again, again, you are welcome to wear the mask. Please do. Thank you. Your Honor, this Court has affirmed the grant of summary judgment. Kerwood presents a set of workplace life and grievances that don't rise to the level of adverse employment actions or the creation of a hostile work environment, and she continues to rely on speculation or conjecture rather than record evidence to allege discriminatory or exaltatory avenues. And that's not enough to withstand summary judgment. What was explained in detail in that brief were the majority of the actions that she challenged in her time hard, how the actions that she challenged did not constitute adverse employment actions, how she had to reduce any evidence to support an inference of discriminatory motive, and she has never voted the defendant showing of a nondiscriminatory rationale for all her actions. So I'll just respond briefly to the points that Ms. Kerwood just made right here, where this Court asked for some points of evidence. Ms. Kerwood points to the fact that a younger Hispanic teacher replaced her after she chose to retire. This Court has held in the vacant case that when a long-serving employee voluntarily chooses to retire and is replaced by a younger employee, that doesn't afford an inference of discrimination. That's exactly what happened here. Ms. Kerwood points to the comparators within the record, but the comparators that she points to are allegations in her own pleadings that are repeated in her brief. There's nothing in the record to support her allegations that similarly situated people would do it differently on behalf of their race and age. For example, one of the people on her list that she meets with her complaint in her brief, Tisha Rios. Ms. Kerwood admitted herself in her deposition that Tisha Rios was Hispanic and younger than Ms. Kerwood. So the names that she raises, there's no evidence to show what age they are, what race they were, or how they were treated. They're just names that are repeated again in pleadings in the briefs. Ms. Kerwood also points to the 2015 meeting that she had with Principal Mercedes. Allegations regarding this meeting are time-barred because it's occurred more than 300 days before she got her EEOC complete, but in any event, regardless of what happened at that meeting, it's undisputed that Ms. Kerwood continued to work for another two school years before she voluntarily chose to retire. So regardless of what was said at that meeting, she did not retire or leave the school afterwards. With respect to her retaliation, as Your Honors pointed out, the notices that Ms. Kerwood seeks to base her entire retaliation claim on are no longer taken out of the record, and according to her own allegations, they were sent about a year after she retired. So for all these reasons, Your Honor, we ask that this Court confirm... Were there, in fact, notices? It's a little unclear, Your Honor. In Mr. Mercedes' deposition, he says he doesn't remember sending any notices, but that he did, he would have sent them to close out over the similar cases because he believed that they had to do that under DOE policy. And what was the basis for the District Court's determination or resolution of the retaliation claim? I believe the District Court granted some redemptive defense on the basis of there was no material adverse action because there was no effect on the terms and conditions of her employment. So it assumed that the notices were... Assuming that they were sent. ...were sent. And even if they had been sent, Your Honors, they had no adverse effect on her employment because she retired, and there's no evidence to support it in terms of her retaliatory motive. These notices were allegedly sent. My understanding was that it wasn't seriously or genuinely disputed that they were sent. We do not dispute that, Your Honor, but they are nowhere to be found directly. I appreciate that. And unless, Your Honor, you have any further questions, we can just ask that you confirm some of that. All right. Mr. Glass? Yes. First of all, Your Honor, this is where I noticed, because I don't think there's any drug contest, and I don't think it's disputed, but I just want to say that in this hearing that they were received, remember, the retaliation standard is much broader than the State of Minnesota. But they're not in the record, as far as we know. There's testimony, there's deposition testimony on both sides. That's fine, but the letters are not. As far as we know. There were notices, I believe, in the notice record. There were. They weren't in the records, unless she didn't quote them. But she testified. Did she testify? She did testify. She testified that she received notices. Yes. And we're saying she also did not. And that was not disputed. I think one of the concerns also is we're seeing this lack of credibility in this case. There's a lot of issues about budget. You know, the DOE in this case provided nothing to support. They just claimed budget on everything. And if you think about it, when you read the Walsh case, which I cited earlier, you'll see in that case that Judge Rolando found that this budget plays into this big theory of age discrimination, if you really think about it. Because if he's claiming he's got budget variation, what is he doing? He's getting rid of all the older teachers. And that's what the record shows here. There's plenty of evidence of names of teachers here. They're saying there's no evidence. No, there's no evidence. Look at the record. There's evidence of 15 names of teachers driven out of the school. You know, they pretend they don't know anything. There's nothing in the evidence. That's the problem with the language that's being used by the court here. They keep saying insufficient evidence, not enough evidence, not enough sufficient comparators. But you're claiming a standard that's impossible to get through, and there's more than sufficient evidence here. There are cases I agree. It is not impossible. It is not impossible. It may be difficult, but it's not impossible. Thank you very much. We'll reserve the decision.